United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 30, 2024

Nathan Ochsner, Clerk

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 19-34508** |
| **SANCHEZ ENERGY** | § | |
| **CORPORATION**, *et al.*, | § | **CHAPTER 11** |
| | § | |
| Debtors. | § | |
| | § | |
| **LAKE WHILLANS FUND I LP**, | § | |
| *et al.*, | § | |
| , | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 23-3151** |
| | § | |
| **DELAWARE TRUST** | § | |
| **COMPANY**, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### <u>MEMORANDUM OPINION</u>

This adversary proceeding concerns the validity of a litigation funding agreement. Delaware Trust Company, acting as the representative of Sanchez Energy Corporation's unsecured creditors, entered into a litigation funding agreement with four of Sanchez's unsecured creditors. The purpose of the agreement was to fund litigation seeking avoidance of certain liens held by purportedly secured creditors of Sanchez. Lake Whillans and Clear Harbor are a group of Sanchez unsecured creditors who raise multiple claims for relief against Delaware Trust and the litigation funders. They claim the agreement is in violation of Sanchez's plan, the Court's orders, and law. They also raise claims for breaches of duty by Delaware Trust, as well as conspiracy, aiding and abetting, and unjust enrichment claims against the litigation funders. Delaware Trust and the litigation funders move to dismiss. Lake Whillans' and Clear Harbor's claim that the litigation

funding agreement impermissibly modified the plan is dismissed with prejudice. The remainder of the complaint may be amended.

## BACKGROUND

Sanchez Energy Corporation was an exploration and production company focused on acquiring and developing onshore oil and natural gas resources. Case No. 19-34508, ECF No. 1 at 5. On August 11, 2019, Sanchez and its affiliated entities filed for bankruptcy protection under chapter 11 of the Bankruptcy Code. Case No. 19-34508, ECF No. 1. Sanchez's chapter 11 plan of reorganization was confirmed on April 30, 2020. Case No. 19-34508, ECF No. 1212.

In 2019, a group of purportedly secured lenders (who would eventually become Sanchez's bankruptcy DIP lenders) identified deficiencies in collateral descriptions in certain deeds of trust that secured Sanchez's debt obligations to those lenders. Case No. 19-34508, ECF No. 2808 at 6. The secured creditors filed correction affidavits to fix the collateral descriptions. Case No. 19-34508, ECF No. 2808 at 6.

Sanchez's plan of reorganization provided for post-confirmation litigation of the avoidability of the deeds of trust and correction affidavits (the "Lien-Related Litigation"), with its outcome to determine the ownership of 80% of the equity of the reorganized Sanchez entity. Case No. 19-34508, ECF No. 1212 at 36–37. The plan provides that, upon resolution of the litigation, "Reorganized Debtors shall issue the Post-Effective Date Equity Distribution in the amount of New Common Stock allocated to Class 3, 4 and/or 5 Claims, to the extent such Claims are entitled to receive New Common Stock, pursuant to an order of the Bankruptcy Court." Case No. 19-34508, ECF No. 1212 at 49. The plan requires the post-effective date equity distribution to the allocated pro rata within each class and in a manner "consistent with, as applicable, the priorities set forth in sections 1129(b) and 726 of the Bankruptcy Code." Case No. 19-34508, ECF No. 1212 at 45–46. The plan also provides that any issues regarding the proper allocation of the equity distribution shall be determined by the Court in a manner consistent

with the §§ 1129(b) and 726 priorities.  Case No. 19-34508, ECF No. 1212 at 51.

Pursuant to the plan, Delaware Trust was selected as the "Lien-Related Litigation Creditor Representative" in order to represent all "general unsecured creditors in the Lien-Related Litigation."  Case No. 19-34508, ECF Nos. 1212 at 36; 1289 at 1.  It has "standing to pursue, prosecute and sole authority to settle" the Lien-Related Litigation.  Case No. 19-34508, ECF No. 1212 at 53.  With respect to financing the litigation, the plan states that nothing "restricts the ability of the Lien-Related Litigation Creditor Representative to employ professionals and seek or secure funding or financing to pay for the reasonable fees and expenses incurred in connection with the Lien-Related Litigation to the extent permitted by otherwise applicable law."  Case No. 19-34508, ECF No. 1212 at 50–51.

Following plan confirmation, the Creditor's Committee moved for the administration of the Lien-Related Litigation through a post-effective date litigation trust.  Case No. 19-34508, ECF No. 1238.  The Court denied the motion at a hearing on grounds that it would require an impermissible amendment to Sanchez's plan.  Case No. 19-34508, ECF No. 1256 at 34.  However, the Court clarified that costs and expenses of the Lien-Related Litigation would be paid out of the first proceeds of the litigation and stated that the Creditor Representative would receive common law protections to the extent it acts pursuant to the Court's orders.  Case No. 19-34508, ECF Nos. 1256 at 7–8, 25–26, 26, 30.  The Court then entered an order denying the creation of a trust and appointed Delaware Trust as the Creditor Representative.  Case No. 19-34508, ECF No. 1289.  The order contains a provision for first-out payment of costs and expenses of litigation and the common law immunity provisions described at the hearing.  Case No. 19-34508, ECF No. 1289 at 2.

On July 23, 2020, Delaware Trust entered into a litigation funding agreement with four of Sanchez's unsecured creditors: Brigade Capital, Avenue Capital, Benefit Street Capital, and Taconic Capital

(the "Litigation Funders").  ECF No. 1-1 at 2, 8–12.  This agreement raised $1.5 million in funding for the Lien-Related Litigation.  ECF No. 1-1 at 2.  On January 7, 2021, the parties amended the agreement and raised an additional $95,000.  ECF No. 1-2 at 2, 4–7.  On March 29, 2021, the parties further amended the agreement and raised an additional $4 million.  ECF No. 1-3 at 2, 4–8.  After repayment of funded amounts, the agreement, as amended, provided that an aggregate of up to 90%[1] of the net recoveries of the litigation would be paid to the Litigation Funders.

Delaware Trust and the Litigation Funders allege that they have entered into further litigation funding agreements, raising a total of $17 million.  ECF No. 48 at 15.  The additional agreements and their terms are neither in the record nor the subject of this motion to dismiss.  This motion to dismiss solely involves the litigation funding agreement totaling $5,595,000 in funding (the "Litigation Funding Agreement").

The Lien-Related Litigation proceeded in three phases.  On August 3, 2023, the third phase of the litigation was complete, and the Court issued its memorandum opinion and final order resolving the Lien-Related Litigation.  Case No. 19-34508, ECF Nos. 2808, 2809.  The Court found in favor of Delaware Trust and awarded 69.73% of the equity interests in the reorganized Sanchez entity to "holders of Allowed Class 4 and Allowed Class 5 Claims, their successors and assigns, pro rata."  Case No. 19-34508, ECF No. 2809 at 1.  The Court's orders in all three phases of the Lien-Related Litigation are currently on appeal. Case No. 19-34508, ECF No. 2863 at 5.

Plaintiffs Lake Whillans and Clear Harbor are a group of general unsecured creditors who did not participate in the Litigation Funding Agreement.  ECF No. 1 at 12.  They filed this adversary proceeding on August 11, 2023.  ECF No. 1.  They assert six claims for relief.  The first claim for relief essentially seeks declarations that the Litigation Funding Agreement is void and unenforceable because it is inconsistent with Sanchez's plan of reorganization and the Court's orders.  ECF No.

---

[1] The 90% was subject to reduction if less than the full amount had been funded.

1 at 31–32.  The second claim for relief asserts a breach of fiduciary duty by Delaware Trust.  ECF No. 1 at 32.  The third claim for relief alleges that the Litigation Funders engaged in a conspiracy to cause Delaware Trust to commit a breach of fiduciary duty.  ECF No. 1 at 33.  The fourth claim for relief alleges that the Litigation Funders aided and abetted a breach of fiduciary duty by Delaware Trust.  ECF No. 1 at 36.  The fifth claim for relief alleges that Delaware Trust and the Litigation Funders impermissibly modified and violated Sanchez's plan of reorganization.  ECF No. 1 at 36.  The sixth claim for relief alleges unjust enrichment against the Litigation Funders.  ECF No. 1 at 37.  Delaware Trust and the Litigation Funders filed their motion to dismiss on October 2, 2023.  ECF No. 48.

## JURISDICTION

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  The dispute has been referred to the Bankruptcy Court under General Order 2012-6.

## LEGAL STANDARD

The Court reviews motions under Federal Rule of Civil Procedure 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."  *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007).  However, the Court will not strain to find inferences favorable to the plaintiff.  *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Motions to dismiss for failure to state a claim upon which relief can be granted "are viewed with disfavor and are rarely granted."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).  To avoid dismissal under Rule 12(b)(6), the plaintiff must provide sufficient factual matter to state a claim for relief that is plausible on its face when accepting that factual matter as true.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).   The plausibility standard asks for more than "a sheer possibility that the defendant acted unlawfully." *Id.*; *see Lormand*, 565 F.3d at 232 ("[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))).

## DISCUSSION

Lake Whillans and Clear Harbor assert multiple claims against Delaware Trust and the Litigation Funders.   Lake Whillans' and Clear Harbor's claim that the litigation funding agreement impermissibly modified the plan is dismissed with prejudice.   The remainder of the complaint may be amended.

## I.   LAKE WHILLANS' AND CLEAR HARBOR'S FIRST CLAIM DOES NOT STATE A PLAUSIBLE BASIS FOR RELIEF

Lake Whillans' and Clear Harbor's first claim for relief seeks multiple declaratory judgments nullifying the Litigation Funding Agreement.   Lake Whillans and Clear Harbor request a declaration "that the Post-Effective Date Equity Distribution to persons or entities other than the Litigation Funding Agreements signatories . . . are in no way diminished, impaired, or affected by any terms in the Litigation Funding Agreements." ECF No. 1 at 31–32.   Lake Whillans and Clear Harbor also request a declaration that Delaware Trust and the Litigation Funders "have no right to make any application pursuant to paragraph 5 of the Final Order or Article IV(C)(2) of the confirmed Plan to issue, ratify, or authorize the issuance of equity in the Reorganized Debtor other than for their pro rata share of the equity allocated and

vested in claimholders."  ECF No. 1 at 32.  Lake Whillans and Clear Harbor also request a declaration that "the Litigation Funding Agreements are contrary to the Plan and Final Order and, as such, are void and unenforceable."  ECF No. 1 at 32.  Lake Whillans and Clear Harbor essentially ask the Court to declare that the Litigation Funding Agreement is inconsistent with Sanchez's plan of reorganization and the Court's orders and has no effect on the equity distributions awarded in the Lien-Related Litigation.

### A.    The Litigation Funding Agreement Is Not Facially Inconsistent with Sanchez's Plan and the Court's Orders

The Court first turns to the language of Sanchez's plan of reorganization.  Section IV(D) of the plan addresses the Lien-Related Litigation and the costs and expenses associated with the litigation.  Case No. 19-34508, ECF No. 1212 at 50.  The relevant provision regarding litigation financing is the following:

> Without limiting the foregoing, for purposes of clarification, nothing herein restricts the ability of the Lien-Related Litigation Creditor Representative to employ professionals and seek or secure funding or financing to pay for the reasonable fees and expenses incurred in connection with the Lien-Related Litigation to the extent permitted by otherwise applicable law.

Case No. 19-34508, ECF No. 1212 at 50–51.

Lake Whillans and Clear Harbor argue this clause has two limitations, the first being that the provision of financing be permitted by "otherwise applicable law" and the second that the amount of financing, including the rate of return, be reasonable.  ECF Nos. 1 at 31; 54 at 21–24.  The Court agrees only with the first limitation in a facial challenge.  The second limitation may arise under the breach of fiduciary duty allegations, but is not a per se violation of the confirmed plan.

"[C]ourts regularly apply principles of contract interpretation to clarify the meaning of the language in reorganization plans." *Compton v. Anderson (In re MPF Holdings U.S. LLC)*, 701 F.3d 449, 457 (5th Cir. 2012). "The language of the contract, unless ambiguous, represents the intention of the parties." *Kimbell Foods, Inc. v. Republic Nat'l Bank of Dall.*, 557 F.2d 491, 496 (5th Cir. 1977), *aff'd sub nom. U. S. v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979).

The clause's language states that the Creditor's Representative may obtain litigation financing to pay for the Lien-Related Litigation to the extent that such financing is permitted by "otherwise applicable law." The clause also requires that the actual fees and expenses of litigation be reasonable. The 90% rate of return from the Litigation Funding Agreement is not a fee or expense of litigation but rather a conditional return on debt incurred to pay for the fees and expenses of litigation. *See Dopp v. Yari*, 927 F. Supp. 814, 823–24 (D.N.J. 1996). The Plaintiffs do not allege that the underlying legal fees and expenses were unreasonable. The only limitation with respect to the 90% return is that it be valid under other "otherwise applicable law."

Lake Whillans' and Clear Harbor's next purported qualification on Delaware Trusts' ability to obtain litigation financing is the following language in Sanchez's plan: "The parties to the Lien-Related Litigation shall use all reasonable efforts to minimize the costs of such litigation." Case No. 19-34508, ECF No. 1212 at 50. Lake Whillans and Clear Harbor argue that Delaware Trust did not minimize costs of the Lien-Related Litigation because it failed to engage in a market solicitation process for litigation financing and obtained financing that resulted in 90% of net recoveries of the Lien-Related Litigation being allocated to the Litigation Funders. ECF No. 54 at 20. This provision only requires the parties to make reasonable efforts to minimize the costs of the Lien-Related Litigation itself. There is no allegation that the $5.6 million in fees and expenses were unreasonable. This provision does not necessarily limit the 90% return in the Litigation Funding Agreement.

That is a challenge that is preserved for the various fiduciary claims that survive dismissal.

Lake Whillans and Clear Harbor next argue that the Litigation Funding Agreement violates the pro rata distribution provided in Sanchez's plan and allocated in the Court's final order resolving the Lien-Related Litigation. ECF Nos. 1 at 32; 54 at 23–26. The Court's final order allocated 69.73% of the equity interests "amongst the holders of Allowed Class 4 and Allowed Class 5 Claims, their successors and assigns, pro rata." Case No. 19-34508, ECF No. 2809 at 1. Sanchez's plan also requires pro rata distribution of the equity interests. Case No. 19-34508, ECF No. 1212 at 45–46. Lake Whillans and Clear Harbor assert that the Litigation Funding Agreement's allocation of 90% of the net returns of the Lien-Related Litigation to the Litigation Funders necessarily violates the pro rata distribution by distributing the vast majority of the returns to a select few unsecured creditors. ECF No. 54 at 23, 25.

The Litigation Funding Agreement does not alter the pro rata allocation in the Court's order. The Litigation Funding Agreement compensates the Litigation Funders for their risk in financing the costs of the Lien-Related Litigation. Although the Litigation Funders are themselves unsecured creditors, the compensation they receive is not on account of their claims but rather pursuant to a separate contribution. *See In re Peabody Energy Corp.*, 933 F.3d 918, 925 (8th Cir. 2019) ("[A] reorganization plan may treat one set of claim holders more favorably than another so long as the treatment is not for the claim but for district, legitimate rights or contributions from the favored group separate from the claim."). It is true that a significant portion of the net recoveries are allocated to the Litigation Funders under their agreement with Delaware Trust. The remainder of the net recoveries will nevertheless be distributed pro rata under Sanchez's plan and the Court's final order resolving the Lien-Related Litigation.

The Litigation Funding Agreement is not inconsistent with Sanchez's plan and the Court's orders. The issue of whether the 90%

allocation complies with applicable law is addressed below.  But nothing in the plan itself restricted the amount that could be allocated to the Litigation Funders.

### B.  The Litigation Funding Agreement Is Not Inconsistent with "Otherwise Applicable Law"

The next consideration is determining whether the Litigation Funding Agreement is consistent with "otherwise applicable law."

The parties contest whether the Litigation Funding Agreement violates the Bankruptcy Code's priority distribution scheme.  Lake Whillans and Clear Harbor point to language in Sanchez's plan of reorganization requiring any issues with the allocation of the final equity distribution to be determined by the Court and consistent with "the priorities set forth in sections 1129(b) and 726 of the Bankruptcy Code."  Case No. 19-34508, ECF No. 1212 at 51.  Sanchez's plan also requires the net proceeds of the Lien-Related Litigation to be allocated to the general unsecured claims in a manner consistent with these priorities.  Case No. 19-34508, ECF No. 1212 at 46.  Lake Whillans and Clear Harbor argue that the "financing arrangements upend the Code's priority scheme by delivering almost all the recovery into the coffers of a favored few."  ECF No. 54 at 18.  Lake Whillans and Clear Harbor seem to be alleging that the 90% rate of return violates § 726 of the Bankruptcy Code.  ECF No. 54 at 26.  They make no arguments as to how § 1129(b) is violated.

Section 726 of the Bankruptcy Code establishes "a waterfall for the distribution of a debtor's assets in a Chapter 7 liquidation.*"  In re Ultra Petroleum Corp.*, 51 F.4th 138, 158 (5th Cir. 2022), *cert. denied sub nom. Ultra Petroleum Corp. v. Ad Hoc Comm. of OpCo Unsecured Creditors*, 143 S. Ct. 2495 (2023).  It dictates the order of distribution of the property of the bankruptcy estate.  *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983).  This priority system applies to payment on account of claims against the bankruptcy estate.  *See* 11 U.S.C. § 726(a).

Although the Court does not agree that there is a violation of § 726, that issue is not relevant. Section 726 does not directly apply in a chapter 11 case. It is certainly true that § 726 sets a baseline measure for how a hypothetical chapter 7 case would be viewed for plan confirmation. Confirmation has occurred. Moreover, the complaint fails to even suggest how a hypothetical chapter 7 trustee would have funded the litigation.

The compensation paid to the Litigation Funders under the Litigation Funding Agreement is not payment on account of their claims against Sanchez's estate. It is a conditional payment made to compensate the Litigation Funders for the provision of value separate from their claims. *See In re Peabody Energy Corp.*, 933 F.3d at 925; *cf. In re Latam Airlines Grp., S.A.*, 643 B.R. 756, 766 (S.D.N.Y. 2022) ("Courts often approve reorganization plans that provide certain claimants additional benefits—including backstop fees and additional opportunities to invest in preferred equity—in exchange for their agreement to backstop certain offerings."). Although the Litigation Funders may be unsecured creditors entitled to a distribution under the Court's final order, their compensation under the Litigation Funding Agreement is a repayment of principal and payment of a rate of return. The Litigation Funding Agreement does not violate the Code's priority scheme.

Lake Whillans and Clear Harbor next argue that the Litigation Funding Agreement violates principles of lodestar. ECF No. 54 at 18. Lodestar is a method applied to calculate court-awarded attorneys' fees and has no relevance to the Litigation Funding Agreement. *See Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 415–16 (5th Cir. 2022). Lake Whillans and Clear Harbor also assert that the returns of the Litigation Funding Agreement do not fall within a category of taxable court costs. ECF No. 54 at 18–19. These payments are not court costs. These arguments fail.

The parties next contest whether the common fund doctrine supports the Litigation Funding Agreement. ECF Nos. 54 at 19; 57 at

13.    Application of the doctrine is unnecessary.  The common fund doctrine is an equitable remedy used to reimburse litigation expenses and costs out of a class recovery or a fund recovered for the benefit of a group.  *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013); *City of San Antonio, Texas v. Hotels.com, L.P.*, No. 5-06-CV-381-OLG, 2017 WL 1382553, at *17 (W.D. Tex. Apr. 17, 2017); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. CIV.A. H-01-3624, 2008 WL 2714176, at *4 (S.D. Tex. July 10, 2008).  It is "based on the principle that those receiving the benefits of the suit should bear their fair share of the expenses."  *City of Dallas v. Arnett*, 762 S.W.2d 942, 954 (Tex. App. 1988), *writ denied* (Apr. 26, 1989).  Sanchez's plan of reorganization permits the Creditor Representative to finance the Lien-Related Litigation.  The Court's order appointing Delaware Trust as the Creditor Representative permits any of the litigation expenses advanced by the Litigation Funders to be paid first out from the net recoveries of the Lien-Related Litigation.   Case No. 19-34508, ECF No. 1289 at 2.  Delaware Trust was permitted to obtain litigation financing with first-out reimbursement through the proceeds of litigation by operation of Sanchez's plan and the Court's orders.

Lake Whillans' and Clear Harbor's remaining arguments contest whether Delaware Trust breached its fiduciary duties.  ECF No. 54 at 19, 21–22.  These arguments do not address whether the Litigation Funding Agreement complies with applicable law.  They also replicate arguments made in the complaint's second claim for relief.  These arguments are addressed below.

Lake Whillans' and Clear Harbor's first claim does not state a plausible basis for relief.  The complaint may be amended with respect to this claim.

## II.    LAKE WHILLANS' AND CLEAR HARBOR'S SECOND CLAIM DOES NOT STATE A PLAUSIBLE BASIS FOR RELIEF

Lake Whillans' and Clear Harbor's second claim for relief alleges a breach of fiduciary duty by Delaware Trust.  ECF No. 1 at 32.  They

contend that Delaware Trust owed duties to the unsecured claimholders to "faithfully implement the Plan, not to misappropriate recoveries, and not to charge unsecured claimholders for payments beyond the reasonable value of services benefiting them," as well as a duty to "ensure fair processes, terms, and arrangements for any litigation funding agreements." ECF No. 1 at 32. They claim Delaware Trust breached its duties by entering into the Litigation Funding Agreement and agreeing to "transfer 90% of the net recoveries of general unsecured claimholders to the Preferred Claimholders, in addition to repayment of funds advanced." ECF No. 1 at 32. Delaware Trust also allegedly violated its duties "by failing to engage in a transparent, adequate, and fair process for soliciting, negotiating, and securing funding arrangements." ECF No. 1 at 32–33. They finally allege that Delaware Trust breached its duties "by appointing as a director of the Reorganized Debtor a managing director of Benefit Street, one of the Preferred Claimholders, who conspired to reallocate equity that rightfully belongs pro rata to Plaintiffs and other unsecured claimholders." ECF No. 1 at 33.

Delaware Trust owes fiduciary duties to the unsecured creditors it represents. *See Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339 (Tex. App. 1991) ("A fiduciary relationship exists when the parties are under a duty to act for or give advice for the benefit of another upon matters within the scope of that relationship. It exists where a special confidence is placed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one placing confidence."). Nevertheless, the Court has provided the Creditor Representative certain protections against suit for breaches of duty. The Court's order appointing Delaware Trust as the Creditor Representative provides:

> The common law protections afforded to persons acting pursuant to court orders shall apply to [Delaware Trust Company], and its current and former directors, officers, members, employees, partners, managers, independent

> contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (the "DTC Parties"), to the extent that the common law protections arise under applicable non-bankruptcy law.

Case No. 19-34508, ECF No. 1289 at 2.

The common law provides near-absolute protection against suit to those acting pursuant to court orders, including for breaches of fiduciary duties. *See In re Ondova Ltd. Co.*, 914 F.3d 990, 993 (5th Cir. 2019). The immunity is derived from judicial immunity and is not lost "even though 'the action (the judge) took was in error, was done maliciously, or was in excess of his authority . . . .'" *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)). Only actions that fall outside the scope of the protected individual's duties are not entitled to near absolute immunity. *Ondova*, 914 F.3d at 993.

When a bankruptcy trustee does not act directly pursuant to a court order, but still acts within the scope of its duties as a trustee, it is entitled to a qualified immunity. *Id.*; *see In re Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 437 (5th Cir. 2022) ("[T]he Independent Directors are entitled to all the rights and powers of a trustee. . . . It follows that the Independent Directors are entitled to the limited qualified immunity for an actions short of gross negligence.").

A trustee's qualified immunity is akin to the business judgment standard applied to corporate fiduciaries. In Texas, the business judgment rule "protects corporate officers and directors, who owe fiduciary duties to the corporation, from liability for acts that are within the honest exercise of their business judgment and discretion." *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015). The rule has "been imported into the bankruptcy courts based on the application of non-bankruptcy

law to the conduct of a fiduciary." *In re CNC Payroll, Inc.*, 491 B.R. 454, 461 (Bankr. S.D. Tex. 2013).

In *Smyth*, the Fifth Circuit addressed the proper standard to be applied when a bankruptcy trustee faces personal liability in the performance of its duties. *In re Smyth*, 207 F.3d 758, 761 (5th Cir. 2000). The court first considered the 1997 Final Report of the National Bankruptcy Review Commission. *Id.* The court noted that, after examining conflicting policies,[2] the "Commission ended up recommending the adoption of a gross negligence standard for Chapter 7, 12 and 13 trustees, and tying a Chapter 11 trustee to the standard of care applicable to officers and directors of a corporation in the state in which the Chapter 11 case is pending." *Id.* at 761–62.

The Court then analyzed a bankruptcy trustee's duties. *Id.* The Court found "[t]he requirement that a trustee maintain disinterestedness often results in the selection of trustees who have limited historical knowledge of the debtor's business or prior understanding of the industry in which the business is operated." *Id.* "In addition, the trustee must make enormously complex decisions within tight time constraints and without the assistance of—in fact, in the face of opposition or hostility from—both secured and unsecured creditors." *Id.* Faced with these considerations, the Court concluded that "trustees should not be subjected to personal liability unless they are found to have acted with gross negligence." *Id.* The Court also held that a trustee could be personally liable "for willfully and deliberately breaching his fiduciary duty of loyalty." *Id.*

This standard is sensible. "[C]laims for gross negligence are not barred by the business judgment rule." *F.D.I.C. v. Benson*, 867 F. Supp. 512, 523 (S.D. Tex. 1994) (citing *Cates v. Sparkman*, 11 S.W. 846, 849 (Tex. 1889). A breach of the duty of loyalty is also not protected by the business judgment rule. *See Gearhart Indus., Inc. v. Smith Int'l, Inc.*,

---

[2] "[T]oo little protection might expose a trustee to excessive personal liability and dissuade capable people from becoming trustees, while too much protection would jeopardize the goal of responsible estate management." *Id.* at 761–62.

741 F.2d 707, 719–20 (5th Cir. 1984).  The *Smyth* court essentially applied the business judgment rule to the conduct of bankruptcy trustees.  *See id.*; *Resol. Tr. Corp. v. Norris*, 830 F. Supp. 351, 358 (S.D. Tex. 1993).

Delaware Trust is not a bankruptcy trustee.  Nevertheless, its duties are substantially similar to those both of a bankruptcy trustee and of an independent corporate fiduciary.  Initially, both a bankruptcy trustee and Delaware Trust owe comparable fiduciary duties to a bankruptcy estate's creditors.  *In re Performance Nutrition, Inc.*, 239 B.R. 93, 111 (Bankr. N.D. Tex. 1999) ("A trustee in bankruptcy owes a duty of care and a duty of loyalty to the corporation and its shareholders, similar to a director's fiduciary duties, but also owes those same duties to the creditors of the bankruptcy corporation." (citing *In re Schepps Food Stores, Inc.*, 160 B.R. 792, 797–98 (Bankr. S.D. Tex. 1993))); *In re Huffman*, 486 B.R. 343, 354 (Bankr. S.D. Miss. 2013) ("A bankruptcy trustee is charged with the duty to maximize the value of the bankruptcy estate for creditors." (citing 11 U.S.C. § 704)).

One of the responsibilities of a chapter 11 trustee is pursuing claims belonging to the bankruptcy estate in order to maximize recovery for the estate and creditors.  *See In re MPF Holdings US LLC*, 701 F.3d 449, 453–54 (5th Cir. 2012).  In this case, Delaware Trust is responsible for pursuing the Lien-Related Litigation on behalf of Sanchez's unsecured creditors.  Case No. 19-34508, ECF Nos. 1212 at 36, 53.  The recovery from that litigation is to determine the ultimate distribution of the bankruptcy estate.  Case No. 19-34508, ECF Nos. 1212 at 36–37, 49.  Delaware Trust's role in Sanchez's bankruptcy faces the same considerations as those posed by the Commission and *Smyth* court.  Too little protection to Delaware Trust would hinder its ability to perform its duties, including securing financing to pay for the Lien-Related Litigation.  *Smyth*, 207 F.3d at 761–62; Case No. 19-34508, ECF No. 1212 at 50–51.  Some form of financing was necessary for Delaware Trust to perform its ultimate duty of pursuing claims and obtaining recovery for the unsecured creditors.  Case No. 19-34508, ECF No. 1256

at 21–22.  These considerations support a finding that Delaware Trust's conduct should be analyzed under the same standard applied to bankruptcy trustees and business fiduciaries.

The Court concludes that the qualified immunity standard applies to Delaware Trust.  For Delaware Trust to be held liable, Lake Whillans and Clear Harbor must allege either gross negligence or willful breach of fiduciary duty by Delaware Trust.  These are defined through common law standards.  *See In re Schooler*, 725 F.3d 498, 509 (5th Cir. 2013).  Gross negligence is:

> The intentional failure to perform a manifest duty in reckless disregard of the consequences. . . .  It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care.  It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected.

*Smyth*, 207 F.3d at 762.  The duty of loyalty generally prevents self-dealing transactions and conflicts of interest by a fiduciary.  *Resol. Tr. Corp. v. Norris*, 830 F. Supp. at 358 (citing *Gearhart*, 741 F.2d at 719–20.

There is no allegation that Delaware Trust was acting to line its own pockets, that it was offered or accepted a bribe, or that it otherwise engaged in criminal or quasi-criminal behavior that might remove its protections.

Delaware Trust will have nearly full immunity for implementing a direct order of the Court.  If Delaware Trust was acting within the scope of its duties, but not pursuant to an explicit direction of the Court, it will be liable only for its gross negligence or intentional wrongdoing.

A.      **Lake Whillans and Clear Harbor Do Not Sufficiently Plead a Breach of Fiduciary Duty with Respect to Obtaining Litigation Financing**

Sanchez's plan of reorganization permits Delaware Trust to obtain financing to pay for the costs of litigation. Case No. 19-34508, ECF No. 1212 at 50–51. After plan confirmation, the Court held a hearing on the Unsecured Creditor Committee's emergency motion to approve a litigation trust agreement. At the hearing, Delaware Trust explained the need to obtain financing to fund the Lien-Related Litigation. Case No. 19-34508, ECF No. 1256 at 21–22. Delaware Trust also explained that this funding would likely come from Sanchez's unsecured creditors. Case No. 19-34507, ECF No. 1256 at 33.

At the hearing, the Court stated that, upon its appointment as Creditor Representative, Delaware Trust would be operating with immunity when acting pursuant to the Court's orders. Case No. 19-34508, ECF No. 1256 at 26, 30. The Court also permitted the Creditor Representative to pay for the Lien-Related Litigation, with litigation costs to be paid first out of any proceeds. Case No. 19-34508, ECF No. 1256 at 7–8, 25–26. Following the hearing, the Court issued an order appointing Delaware Trust as the Creditor Representative. Case No. 19-34508, ECF No. 1289. The order contains a provision for first-out payment of costs of Lien-Related Litigation from the proceeds of litigation and provided common law quasi-judicial immunity, as described above. Case No. 19-34508, ECF No. 1289 at 2.

The act of obtaining litigation financing itself is one taken pursuant to Sanchez's plan and the Court's orders. The act would fall under Delaware Trust's quasi-judicial immunity. Lake Whillans and Clear Harbor do not challenge Delaware Trust's act of obtaining litigation financing. Rather, they challenge the terms and surrounding circumstances of the financing transaction. The Court's order does not specify under what terms Delaware Trust may obtain litigation financing.

The need for financing and the potential sources were disclosed prior to Delaware Trust taking any action as Creditor Representative. Although not entitled to quasi-judicial immunity, the financing agreement and the circumstances surrounding the agreement fall within the scope of Delaware Trust's duties under Sanchez's plan and the Court's orders. Delaware Trust is entitled to qualified immunity for these actions. To overcome the immunity, Lake Whillans and Clear Harbor must demonstrate a willful breach of fiduciary duty or gross negligence.

Lake Whillans and Clear Harbor only allege facts they believe are on non-market terms; they then engage in a leap of faith that this must indicate a breach of Delaware Trust's fiduciary duties. ECF No. 1 at 32–33. The complaint does not contain any factual allegations to show the plausibility of intentional wrongdoing or gross negligence. With respect to the duty of loyalty, in their response to the motion to dismiss, Lake Whillans and Clear Harbor merely claim that the "complaint's allegations are centered on Creditor Representative's conflicts of interest, egregious misconduct, corrupt motive, and self-dealing." ECF No. 54 at 32. This is wholly insufficient. The complaint may not merely assume self-dealing by the outcome of the transaction at issue. The statement that Delaware Trust had a conflict of interest is not supported by any facts. The statement that Delaware Trust engaged in egregious misconduct is not supported by any facts. The statement that Delaware Trust was corrupt is not supported by any facts. The statement that Delaware Trust had a corrupt motive is not supported by any facts. The statement that Delaware Trust was engaged in self-dealing is not supported by any facts. The Plaintiffs may not conclude that any of those facts are true merely because they do not like the ultimate result. Any amended complaint must either delete or support those allegations with facts that are supportable under Rule 9011. *The Court will not again tolerate these kinds of allegations if they are so speculative as to violate Rule 9011.* The complaint must make specific allegations of facts sufficient to give rise to a plausible inference that Delaware Trust was self-dealing.

Lake Whillans and Clear Harbor are granted leave to amend their second claim with respect to Delaware Trust obtaining litigation financing. They must allege gross negligence or self-dealing by Delaware Trust. And those allegations must be factually supported in accordance with Rule 9011.

### B. Lake Whillans and Clear Harbor Do Not Sufficiently Plead a Breach of Fiduciary Duty with Respect to Appointing Mr. Buckley to Sanchez's Board

Paragraph four of the Court's final order resolving the Lien-Related Litigation provides: "The Lien-Related Creditor Representative may immediately designate a Director under Section 5.3(a)(iii) of the Shareholder's Agreement." Case No. 19-34508, ECF No. 2809 at 1. Delaware Trust filed a notice stating that "pursuant to ¶4 of the *Final Order Resolving Lien-Related Litigation* [ECF No. 2809], the Lien-Related Litigation Creditor Representative has designated Brent Buckley of Benefit Street Partners as a Director of the Reorganized Debtor." Case No. 19-34508, ECF No. 2812 at 1.

Delaware Trust's act of appointing Mr. Buckley to Sanchez's board of directors is an action taken pursuant to the Court's order. This act itself would fall under Delaware Trust's quasi-judicial immunity. Lake Whillans and Clear Harbor do not challenge Delaware Trust's right to appoint a director to Sanchez's board. They challenge *who* was appointed to the board. The Court's order does not specify who is to be selected to Sanchez's board.

Although not entitled to quasi-judicial immunity, Delaware Trust's choice of director nevertheless falls within the scope of its duties under the Court's order and is entitled to qualified immunity. To overcome the immunity, Lake Whillans and Clear Harbor must demonstrate a willful breach of fiduciary duty or gross negligence.

Lake Whillans and Clear Harbor only allege that Delaware Trust breached its fiduciary duties by appointing Mr. Buckley to Sanchez's board, "who is inherently conflicted as a managing director of Benefit

Street, one of the Preferred Claimholders who conspired to siphon away Plaintiffs' pro rata share of equity." ECF No. 1 at 11. The complaint is devoid of any factual allegations showing intentional wrongdoing or gross negligence by Delaware Trust in appointing Mr. Buckley. The complaint also fails to allege any self-dealing by Delaware Trust in appointing Mr. Buckley to the board. As with litigation financing, the complaint must make specific allegations of facts sufficient to give rise to a plausible inference that Delaware Trust was grossly negligent or self-dealing. Those allegations must comply with Rule 9011.

Lake Whillans and Clear Harbor are granted leave to amend their complaint with respect to the second claim for relief.

### III. LEAVE TO AMEND IS GRANTED WITH RESPECT TO LAKE WHILLANS' AND CLEAR HARBOR'S THIRD AND FOURTH CLAIMS FOR RELIEF

Lake Whillans' and Clear Harbor's third claim for relief alleges that the Litigation Funders engaged in a conspiracy to commit a breach of fiduciary duty. ECF No. 1 at 33–35. They claim that the Litigation Funders knew that Delaware Trust owed fiduciary duties to all unsecured claimholders and they "knowingly participated in [Delaware Trust's] breach of its duties by funding its litigation expenses in exchange for paying far more than the reasonable value of services benefitting all unsecured claimholders." ECF No. 1 at 34. Their fourth claim for relief alleges that the Litigation Funders aided and abetted a breach of fiduciary duty. ECF No. 1 at 36. They assert that the Litigation Funders "knew of the fiduciary relationship between [Delaware Trust] and all unsecured claimholders" and knew that Delaware Trust's "actions were tortious and that it breached its fiduciary duties." ECF No. 1 at 36. They allege that the Litigation Funders acted with intent to assist and in fact "assisted and encouraged fiduciary breaches and tortious conduct of [Delaware Trust]." ECF No. 1 at 36.

Delaware Trust and the Litigation Funders argue that Delaware Trust's immunity from suit for breach of fiduciary duty requires the dismissal of the conspiracy and aiding and abetting claims. ECF No. 48 at 26, 30. Under Texas law, conspiracy and aiding and abetting are dependent torts. *W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App. 2014). This means that "when an underlying tort fails, there can be neither a conspiracy claim nor an aiding and abetting claim related to that failed tort." *Id.* ("West Fork's failure to establish independent tort liability against the named defendant is fatal to its aiding and abetting claims as well as its conspiracy claims."). The principle applies regardless of the reason for failure of the underlying tort. *Id.* at 920.

A dependent claim may be maintained even if no named defendant faces liability for the underlying tort. *United Biologics, L.L.C. v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, 819 F. App'x 204, 208–09 (5th Cir. 2020). In *United Biologicals*, plaintiffs brought against defendants claims for Texas statutory violations, tortious interference with contract, and civil conspiracy. *Id.* at 207. At the time of trial, all but two defendants settled. *Id.* After trial, defendants moved for a directed verdict, partly on grounds that "civil conspiracy was a 'legal impossibility' because Phadia [a defendant], which allegedly committed the underlying tort, had settled." *Id.* They argued that "'[t]he Court [could not] adjudicate the conduct of the parties who [were not] before it,' 'there [was] no other way for the Court to adjudicate the underlying tort at issue,' and 'Miss Winders [a defendant] could not conspire with her own company.'" *Id.* The district court agreed with the reasoning and entered a directed verdict on civil conspiracy. *Id.* The Fifth Circuit disagreed and found that "Phadia's settlement had no bearing on the Plaintiff's ability to prove a civil conspiracy case against the Defendants based on an underlying tort committed by Phadia." *Id.* at 208–09. The court noted that under Texas law, "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff *seeks to hold* at least one of the named defendants liable," and that the co-conspirator need not actually face liability for the

tort.  *Id.* (quoting *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). The court found that "Texas courts are well-versed in submitting for the jury's consideration the question of whether persons in the case contributed to the wrongs alleged . . . ."  *Id.*  The court concluded that "a settlement in general does not prevent submitting to the jury questions about that party's conduct (only pursuing an actual judgment against the settling party)."  *Id.*  The court relied on § 33.003(a) of the Texas Civil Practice and Remedies Code, under which the trier of fact "'shall determine the percentage of responsibility' for claimants, defendants, settling persons, and any responsible parties."  *Id.* (quoting Tex. Civ. Prac. & Rem. Code Ann. § 33.003(a)).

At this time, the Court does not hold that Delaware Trust has quasi-judicial immunity for any of the challenged actions.  In the case that it does so in its to-be-amended complaint, Delaware Trust's immunity is not a basis for dismissing the conspiracy and aiding and abetting claims.

## A.   The Qualified Immunity Standard Applies to Delaware Trust's Conduct

The parties contest the application of the business judgment rule to Lake Whillans' and Clear Harbor's aiding and abetting claim. Delaware Trust and the Litigation Funders argue that Delaware Trust's protections under the business judgment rule require the dismissal of the claim.  ECF No. 48 at 28–30.  Delaware Trust has qualified immunity for the actions challenged by Lake Whillans and Clear Harbor.  Its qualified immunity would apply to both the third and fourth claims for relief.  This may lead to a finding that the Delaware Trust did not breach its fiduciary duties, requiring dismissal of the claims.

The complaint may be amended with respect to the third and fourth claims for relief.  Lake Whillans and Clear Harbor must plead gross negligence or self-dealing in order to state a plausible basis for a breach of fiduciary duty by Delaware Trust.  This claim cannot survive unless there was a breach of duty by Delaware Trust.

**B.      Lake Whillans' and Clear Harbor's Aiding and Abetting Allegations Are Otherwise Sufficient**

Delaware Trust and the Litigation Funders argue that Lake Whillans and Clear harbor have failed to sufficiently plead their aiding and abetting claim.  They assert that aiding and abetting of a breach of fiduciary duty is subject to the Federal Rule of Civil Procedure 9(b) heightened pleading standard and Lake Whillans' and Clear Harbor's conclusory statements about actual knowledge are insufficient to sustain their claim.  ECF No. 48 at 27–28.

Rule 9(b)'s heightened pleading standard applies only when fraud or mistake is an element of a claim or when "fraudulent conduct is alleged to underlie a claim for which fraud is a possible—but not necessary—element." *Tigue Inv. Co. v. Chase Bank of Texas, N.A.*, No. CIV.A.3:03 CV 2490 N, 2004 WL 3170789, at *2 (N.D. Tex. Nov. 15, 2004).  In the latter situation, "particularity is only required to the extent that plaintiff in fact alleges fraud."  *Id.*

Lake Whillan's and Clear Harbor's aiding and abetting claim alleges that the Litigation Funders knew of and assisted Delaware Trust's fiduciary breaches.  ECF No. 1 at 36.  Those fiduciary breaches are based on Delaware Trust's entry into the Litigation Funding Agreement, which Lake Whillans and Clear Harbor argue benefited the Litigation Funders at the expense of the other unsecured creditors.  ECF No. 1 at 32–33.  The overarching allegation is that Delaware Trust failed to act in the best interests of the unsecured creditors that it represents.  Lake Whillans and Clear Harbor do not claim that Delaware Trust or the Litigation Funders engaged in conduct that defrauded the unsecured creditors.  Rule 9(b)'s heightened pleading standard does not apply.

Delaware Trust and the Litigation Funders also argue that the aiding and abetting claim fails to sufficiently plead the Litigation Funders' actual knowledge of Delaware Trust's breaches.  ECF No. 48 at 27.  Lake Whillans' and Clear Harbor's claim for aiding and abetting

of a breach of fiduciary is based on assistance or encouragement.  ECF No. 1 at 36.  The elements of this claim are (1) Delaware Trust breached its fiduciary duties; (2) the Litigation Funders had knowledge that Delaware Trust's conduct constituted a breach of fiduciary duty; (3) the Litigation Funders had the intent to assist Delaware Trust in committing the tort; (4) the Litigation Funders gave Delaware Trust assistance or encouragement; and (5) the Litigation Funders' assistance or encouragement was a substantial factor in causing the breach of fiduciary duty.  *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *12 (Tex. App. Oct. 29, 2020).

Under Federal Rule of Civil Procedure 8(a), a claim for relief requires "a short and plain statement of a claim showing that the pleader is entitled to relief."  Rule 8 is not satisfied where a party pleads "the bare elements of his cause of action."  *Iqbal*, 556 U.S. at 687.  "Post-*Twombly* and *Iqbal*, courts have typically rejected conclusory allegations of knowledge."  *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458 EMC, 2011 WL 4079231, at *5 (N.D. Cal. Sept. 12, 2011).

Lake Whillans' and Clear Harbor's aiding and abetting claim must provide a plausible factual allegation that "the Litigation Funders had knowledge that the Creditor Representative's conduct constituted a breach of fiduciary duty."  The complaint states that the Litigation Funders knew that Delaware Trust owed fiduciary duties to all the unsecured claimholders and that it would breach those duties by entering into the Litigation Funding Agreement "in exchange for paying far more than the reasonable value of services benefiting all unsecured claimholders."  ECF No. 1 at 34.  The complaint also states that the Litigation Funders knew that Delaware Trust would breach its duties if it failed to engage in a transparent funding solicitation process and by appointing a conflicted director to Sanchez's board.   ECF No. 1 at 34.  These allegations go beyond mere conclusory recitals of the elements of an aiding and abetting claim.  However, they do not go far enough to demonstrate gross negligence by Delaware Trust.

Although the aiding and abetting claim must be amended due to the failure to properly plead gross negligence or self-dealing, the aiding and abetting allegations otherwise meet the pleading standard if the Plaintiffs can demonstrate a plausible claim that Delaware Trust breached its duties.

## C.   Lake Whillans' and Clear Harbor's Conspiracy Allegations Are Otherwise Sufficient

Delaware Trust and the Litigation Funders also allege that Lake Whillans' and Clear Harbor's conspiracy claim must be dismissed because the complaint does not sufficiently plead the specific intent and knowledge required for the claim.  ECF No. 48 at 30–31.

A civil conspiracy "is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983).  The elements of a civil conspiracy claim are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result."  *Id.*  "[C]ivil conspiracy requires specific intent.  For a civil conspiracy to arise, the parties must be aware of the harm or wrongful conduct at the inception of the combination or agreement*." Johnston v. Dexel*, No. CV H-16-3215, 2017 WL 11612500, at \*11 (S.D. Tex. Aug. 18, 2017) (quoting *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995)).  "A common intent to accomplish a given goal, plus a tort in furtherance of that goal, are not enough.  The parties must have agreed to accomplish an unlawful goal or to accomplish a lawful goal by unlawful means."  *Id.* (quoting *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)).  "One cannot agree, expressly or tacitly, to commit a wrong about which he has no knowledge."  *Firestone Steel Prod. Co. v. Barajas*, 927 S.W.2d 608, 615 (Tex. 1996).

"The federal courts have recognized that the nature of conspiracies often makes it impossible for the plaintiff to provide details

at the pleading stage and that the pleader should be allowed to resort to the discovery process and not be subjected to a dismissal of his complaint." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1233 (4th ed. 2021).

The complaint alleges that the Litigation Funders knew that Delaware Trust would be breaching its fiduciary duties by entering into agreements that "agreed to pay more than the reasonable value of services benefiting all unsecured claimholders." ECF No. 1 at 34. It states that, despite this knowledge, the Litigation Funders sought to enter into deals that awarded them a total of 90% of the net recoveries of the Lien-Related Litigation at the expense of the unsecured creditors. ECF No. 1 at 35. And, as alleged, the Litigation Funders and Delaware Trust took overt acts in furtherance of this "wrongful goal" by having "a meeting of the minds and agree[ing] to enter into the Litigation Funding Agreements . . . and agree[ing] to appointment of an inherently conflicted director of the Board of the Reorganized Debtor." ECF No. 1 at 34–35. The complaint also alleges that the Litigation Funders and Delaware Trust intentionally failed to disclose the Litigation Funding Agreement and its terms from the unsecured claimholders until long after the agreement was entered. ECF Nos. 1 at 8; 54 at 33. The accusations in the complaint suggest a secret agreement to alienate 90% of litigation recoveries to the Litigation Funders at the unsecured creditors' expense. Nowhere does the complaint offer any factual support for a theory that a grant of a 90% interest was grossly negligent.

Although the conspiracy claim must be amended, the conspiracy allegations themselves otherwise meet the pleading standard if the Plaintiffs can demonstrate a plausible claim that Delaware Trust breached its duties.

With respect to both of these claims, the Court has substantial doubt that Lake Williams and Clean Harbor can demonstrate any reason why Delaware Trust would breach its fiduciary duties. Although motive may not be an element of either of these claims, the Court is

given pause under *Iqbal* and *Twombly*.  But, the Court finds that the allegations are minimally sufficient.

Leave to amend is granted with respect to the third and fourth claims for relief.

## IV.   LAKE WHILLANS' AND CLEAR HARBOR'S FIFTH CLAIM DOES NOT STATE A PLAUSIBLE BASIS FOR RELIEF

Lake Whillans' and Clear Harbor's fifth claim for relief alleges an impermissible modification and violation of Sanchez's plan of reorganization.  ECF No. 1 at 36–37.  They assert that Delaware Trust and the Litigation Funders "violated and modified the Confirmed Plan by purporting to alter the required pro rata distributions owed to holders of claims classified as unsecured or under-secured claims."  ECF No. 1 at 37.  They further assert that Delaware Trust and the Litigation Funders did not have a right to modify the plan, and even if they did, they did not meet the procedures for plan modification.  ECF No. 1 at 37.

Lake Whillans' and Clear Harbor's basis for alleging that the plan was modified is that the Litigation Funding Agreement violates the pro rata distribution called for in Sanchez's plan of reorganization.  ECF No. 1 at 37.  For the reasons stated in Section I of this Opinion, the Litigation Funding Agreement does not alter the plan's pro rata distribution requirement.  The Litigation Funders' conditional rate of return is compensation separate from their claims.  As explained in Section I of this Opinion, Lake Whillans and Clear Harbor have also not met their burden of creating a plausible claim that the agreements violate the terms of Sanchez's plan.

Lake Whillans' and Clear Harbor's fifth claim does not state a plausible basis for relief.  Lake Whillans and Clear Harbor may amend their complaint only with respect to their plan violation claim.  The plan modification claim is dismissed with prejudice.

## V.    LAKE WHILLANS' AND CLEAR HARBOR'S SIXTH CLAIM DOES NOT STATE A PLAUSIBLE BASIS FOR RELIEF

Lake Whillans' and Clear Harbor's sixth claim for relief alleges unjust enrichment by the Litigation Funders.  ECF No. 1 at 37–38.  They assert the Litigation Funders "were and would be unjustly enriched by receiving payment far greater than the value of services rendered, paid from the net recovery in the Lien-Related Litigation designated for all unsecured claimholders."  ECF No. 1 at 38.  The argue the Litigation Funders "would receive this benefit at the expense of all unsecured claimholders who are not parties to the Litigation Funding Agreements," and that it would be unconscionable for the Litigation Funders to retain these benefits beyond the fair value of their services provided.  ECF No. 1 at 38.

"Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits."  *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. 2009).  "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."  *Id.*  "A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage."  *Id.*  "The plaintiff must establish that the defendant received money 'which in equity and good conscience belongs to the plaintiff.'"  *Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F. Supp. 2d 664, 678 (E.D. Tex. 1998), *aff'd*, 199 F.3d 788 (5th Cir. 2000) (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App. 1997)).

"Unjust enrichment is not a proper remedy merely because it 'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant, or because the benefits to the person sought to be charged amount to a windfall."  *Heldenfels*, 832 S.W.2d at 42 (quoting *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App. 1987)).  "Rather, a claim for unjust enrichment lies where the

circumstances give rise to an implied or quasi-contractual obligation to return benefits." *Texas Carpenters*, 21 F. Supp. 2d at 678

Delaware Trust and the Litigation Funders argue there can be no unjust enrichment claim because Sanchez's plan of reorganization constitutes an express contract that governs the parties and the subject matter of this suit.  ECF No. 48 at 31–34.  Under Texas law, "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).  Unjust enrichment claims are based on quasi-contract. *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015) (quoting *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000)).

It is unnecessary to address whether a chapter 11 plan of reorganization is a contract for purposes of precluding an unjust enrichment claim.  Even if the plan were a contract that governs these parties, it does not address the subject matter of this suit.  The plan merely permitted the Creditor Representative to obtain litigation funding.  The plan made no mention of the terms of the litigation funding.  Case No. 19-34508, ECF No. 1212 at 50–51.  These terms, including the terms providing an aggregate of 90% of the net recoveries of the Lien-Related Litigation to the Litigation Funders, were all made pursuant to separate agreements to which the unsecured creditors were not parties.  ECF Nos. 1-1 at 2; 1-2 at 2; 1-3 at 2.  Delaware Trust and the Litigation Funders may not rely on Sanchez's plan as a basis of precluding Lake Whillans' and Clear Harbor's unjust enrichment claim.

Unjust enrichment requires the plaintiff to allege fraud, duress, or undue advantage. *Texas Integrated Conveyor*, 300 S.W.3d at 367. Lake Whillans and Clear Harbor make no allegations of fraud or duress. ECF No. 1 at 37–38.  Although not well-defined under Texas law, courts have found undue advantage in cases where an offending party took advantage of a position of trust or where the offending party did not pay for goods or services. *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 382 (5th Cir. 2020).  There is no allegation

that the Litigation Funders did not pay for goods and services. ECF No. 1 at 37–38. There also does not seem to be any allegation of the Litigation Funders taking advantage of a position of trust. ECF No. 1 at 37–38. Lake Whillans' and Clear Harbor's unjust enrichment claim appears to be based on the premise that the Litigation Funders "took unfair and undue advantage of *Plaintiffs* by arranging to confiscate 90%+ of the equity, without prior notice or consent, as a 100x return for self-funding their own claims." ECF No. 54 at 34. This statement does not explain how the Litigation Funders took advantage of any position of trust between themselves and the unsecured creditors, nor does it make any plausible allegations of how the Litigation Funders took undue advantage of the unsecured creditors. Lake Whillans' and Clear Harbor's complaint is even more vague when it alleges that it would be unconscionable to permit the Litigation Funders to retain the benefits of the agreements. ECF No. at 38.

These allegations are insufficient. An unjust enrichment claim cannot simply be based on unfair or wrongful conduct or the obtaining of a windfall. *See Texas Carpenters*, 21 F. Supp. 2d at 678; *Heldenfels*, 832 S.W.2d at 42. Lake Whillans and Clear Harbor must explain how the Litigation Funders engaged in fraud, duress, or the taking of undue advantage of the unsecured creditors.

Lake Whillans' and Clear Harbor's sixth claim does not state a plausible basis for relief. The complaint may be amended with respect to this claim.

## CONCLUSION

The Court will enter an order consistent with this Memorandum Opinion.

SIGNED 04/30/2024

Marvin Isgur
United States Bankruptcy Judge